[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2012
JOHN LEY
CLERK

No. 11-11923

_____

D.C. Docket No. 2:10-cr-00055-CEH-DNF-1


UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

RODERICK L. COCHRAN,

Defendant - Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 14, 2012)

Before WILSON, ANDERSON and HIGGINBOTHAM,* Circuit Judges.

_____

* Honorable Patrick E. Higginbotham, United States Circuit Judge for the Fifth Circuit,
sitting by designation.

WILSON, Circuit Judge:

Roderick Cochran was convicted for possessing with intent to distribute five grams or more of cocaine base and possessing with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1). The cocaine and cocaine base at issue were discovered when officers searched a residence; Cochran was standing in the driveway of that residence at the time of the search. The government's theory of the case was that although Cochran lacked actual possession of the contraband, he constructively possessed the drugs. This circuit's pattern jury instruction regarding constructive possession states: "'Constructive possession' of a thing occurs if a person doesn't have actual possession of it, but has both the power and the intention to take control over it later." 11th Cir. Pattern Jury Instructions (Criminal), Special Instruction 6 (2010). The government requested that an additional sentence be added: "Constructive possession of a thing also occurs if a person exercises ownership, dominion, or control over a thing or premises concealing the thing." The district court permitted the instruction over Cochran's objection.

Cochran argues on appeal that this jury instruction was misleading as a matter of law. He also argues that the district court abused its discretion by admitting evidence of his prior drug-related offense, and he challenges the

sufficiency of the evidence to sustain his convictions.

I.

On December 18, 2009, authorities executed a search warrant of the residence at 110 Lucille Avenue while Cochran was standing in the driveway of that home. Cochran was detained while officers conducted the search. Inside the house, authorities found ammunition in a dresser drawer in one of the bedrooms; a digital scale and a small quantity of cocaine in a dresser of another bedroom; small bags containing cocaine and crack, two forks, and a measuring cup bearing drug residue in the kitchen; and more bags of drugs and paraphernalia in a converted living space that had previously been a garage.

Cochran was indicted and charged with possessing ammunition after having been convicted of a felony, 18 U.S.C. §§ 922(g)(1), 924(e), and 2 (count one); possessing with intent to distribute cocaine base, 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) and 18 U.S.C. § 2 (count two); and possessing with intent to distribute cocaine, 21 U.S.C. § 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (count three). Cochran pled not guilty, and the case proceeded to trial.

During trial, the government called Officer Candice Pettacio as a witness, and she testified that she had been using binoculars to conduct surveillance of the 110 Lucille Avenue residence prior to the search on December 18, 2009. She

stated that she was positioned about a block and a half away from the home and had seen a black male, later identified as Cochran, exit and re-enter the residence several times. On cross-examination, Cochran presented Pettacio with a number of photographs of the area taken in 2010 and pointed out how trees and foliage blocked the view of the residence from her alleged vantage point. Pettacio replied that the photographs did not accurately depict what she recalled of the scene. She also stated that she had returned to the neighborhood in August or September of 2010 and that new obstructions, such as cars and overgrown vegetation, had made it impossible to see 110 Lucille Avenue from her prior point of observation. She then reiterated her testimony that in 2009 she had been able to observe Cochran leave and re-enter the house with the aid of her binoculars.

Following Pettacio's testimony, members of the SWAT team who raided the home testified that they had seen no one in the house other than a young child. The government then called Officer Kelly Witt as a witness. He recounted that he had assisted with the search and had discovered in the kitchen two forks, a measuring cup bearing drug residue, and a cigar box containing a number of small plastic bags filled with drugs. Witt also found drugs and paraphernalia in one of the bedrooms of the home and in the converted garage. Witt further stated that during the search he encountered a piece of mail sitting on the kitchen table. The

envelope was addressed to both Roderick Cochran and Rodnesha Cochran at 110 Lucille Avenue and listed "Life Skills" as the sender. Witt testified that he searched Cochran and found in Cochran's pocket a key that unlocked the door of the residence. He also obtained Cochran's driver's license, which reflects that Cochran's address is 116, rather than 110, Lucille Avenue. On cross-examination, Witt testified that no contraband had been found in the living room and that the drugs in the kitchen were found on top of a kitchen cabinet, near the ceiling, and in a cigar box under the microwave stand. He also confirmed that Cochran's fingerprints were not detected on any of the items seized in the search.

The government also called Officer Dominic Zammit as a witness. Zammit described the circumstances surrounding Cochran's arrest in 2004, which involved Cochran possessing packets of powder cocaine and marijuana.[1] The district court instructed the jury that Zammit's evidence was only relevant to determine whether Cochran had "the intent necessary for the crime charged, knowledge, motive, and absence of mistake or accident." After the government rested, Cochran moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The district court denied the motion.

---

[1] Prior to trial, the government filed a motion to admit evidence of Cochran's 2004 offense. The district court granted that motion over Cochran's objection.

The defense then called Cochran's daughter, Rodnesha Cochran. She testified that she had lived at 110 Lucille Avenue with her uncle for two or three months but had moved out a few weeks before the police search. During the time she lived in the home, she attended an educational institution called Life Skills. Rodnesha stated that Cochran lived with his mother at 116 Lucille Avenue but had visited 110 Lucille Avenue many times. She also testified that she had seen drugs in the home on many occasions, that the house was heavily trafficked in the evenings, and that she had witnessed her uncle using drugs. The principal of Life Skills then testified that letters sent to students were addressed using a mailing system that automatically added the student's listed contact person as a recipient but otherwise utilized only the student's street address.

The defense also called an investigator for the Federal Public Defender's Office who had photographed the area around 110 Lucille Avenue in August 2010. The investigator testified that it was impossible to view the residence from Officer Pettacio's alleged stake-out position.

The government called rebuttal witness Demeitra Battle, Rodnesha's juvenile probation officer. Battle testified that Rodnesha had reported that she and her father both resided at 110 Lucille Avenue. Battle also stated that Rodnesha had said that she wanted to move out of the house at 110 Lucille Avenue because

"her father was having company that she didn't approve of." Another officer testified that he had been sent to the residence to check on Rodnesha and had witnessed Cochran in the home.

Following the close of evidence, the court discussed the proposed jury instructions with the parties. The government requested that the jury be given a possession instruction that consisted of the standard pattern instruction language plus an additional sentence more tailored to the circumstances of the case:

> The law recognizes several kinds of possession . . . . Actual possession of a thing occurs if a person knowingly has direct physical control of it. Constructive possession of a thing occurs if a person doesn't have actual possession of it but has both the power and the intention to take control over it later. Constructive possession of a thing also occurs if a person exercises ownership, dominion, or control over a thing or premises concealing the thing.

Cochran argued in response that the addition of the final sentence to the pattern instruction omitted the knowledge element and stripped the instruction of the essential "power and intention to take control" language. He also contended that although evidence of dominion or control over the premises where contraband is located may serve as circumstantial evidence, it does not automatically establish constructive possession. The district court permitted the instruction over Cochran's objection.

The court addressed the jury, beginning by advising it to follow all of the

7

instructions as a whole. It read to the jury the definition of "knowingly" and later in the instructions stated that the drug possession crimes required the defendant to have "knowingly possessed" the drugs at issue. The court then recited another paragraph of instructions before reaching its instruction regarding types of possession, in which it delivered the objected-to language requested by the government.

After the jury retired for deliberations, it submitted a question to the court: "If you have free access to a home then do you have constructive possession of the contents?" The district court replied that it could not answer the question and instructed the jury to consult the jury instructions. During deliberations the next day, the jury again sent a note to the district court, this time asking: "Regarding Count 1 [the ammunition charges] does the definition of constructive possession apply to the phrase 'knowingly possess?'" Again the district court referred the jury to the jury instructions, refusing to answer the question.

Ultimately, the jury returned a verdict finding Cochran not guilty of count one, the ammunition charges, but guilty regarding count two and count three, the drug offenses. Cochran was sentenced to 132 months in prison. This appeal followed.

II.

Cochran first argues, as he did below, that the jury instruction regarding constructive possession was misleading as a matter of law. We review jury instructions that were properly challenged below *de novo* to determine "whether the instructions misstated the law or misled the jury to the prejudice of the objecting party." *United States v. Felts*, 579 F.3d 1341, 1342 (11th Cir. 2009) (per curiam). We analyze the objected-to portion of the instructions "in light of the entire charge" and we keep in mind "that isolated statements which appear prejudicial when taken out of context may be innocuous when viewed in light of the entire trial." *United States v. McCoy*, 539 F.2d 1050, 1063 (5th Cir. 1976).[2] We will reverse only if we have a "substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." *United States v. Fulford*, 267 F.3d 1241, 1245 (11th Cir. 2001) (quotation marks omitted).

We agree with Cochran that there were a number of problems with the given constructive possession instruction. The standard pattern jury instruction in this circuit regarding constructive possession is: "'Constructive possession' of a thing occurs if a person doesn't have actual possession of it, but has both *the power and the intention to take control over it later*." 11th Cir. Pattern Jury Instructions

---

[2] The Eleventh Circuit has adopted as binding precedent all Fifth Circuit cases handed down on or before September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

(Criminal), Special Instruction 6 (2010) (emphasis added). The government's suggested addition that, "[c]onstructive possession of a thing also occurs if a person exercises ownership, dominion, or control over a thing or premises concealing the thing," eliminates the "power and the intention to take control over it later" language. That omission is especially troubling given that the definition of "constructive possession" immediately follows the instruction that "[a]ctual possession of a thing occurs if a person *knowingly* has direct physical control of it." 11th Cir. Pattern Jury Instructions (Criminal), Special Instruction 6 (2010) (emphasis added). Such a juxtaposition could create an inference that constructive possession, as defined by the government's instruction, lacks an intentionality requirement.

Furthermore, the supplemented constructive possession instruction states that control over the *premises*—rather than control over the contraband itself—is sufficient to convict. Although we have found control of premises to be enough to uphold a conviction on a sufficiency of the evidence challenge, *see, e.g., United States v. Poole*, 878 F.2d 1389, 1392 (11th Cir. 1989) (per curiam), that does not mean that the jury should be instructed that control of premises can serve as a sole basis of conviction. We have indicated that the essence of constructive possession is the power to control the contraband itself and that control of the premises

10

simply permits an *inference* of that power. *See United States v. Mieres-Borges*, 919 F.2d 652, 657 (11th Cir. 1990) ("[C]onstructive possession . . . may be shown *circumstantially* through evidence of ownership, dominion, or control over the premises on which the substance is located." (emphasis added)). It is the jury's choice and responsibility to draw inferences, *see United States v. Henderson*, 693 F.2d 1028, 1031 (11th Cir. 1982), and we disapprove of a jury instruction that invades the jury's province by implicitly mandating an inference.

Although we agree that district courts should utilize a constructive possession instruction more precise than the one given in this case, we cannot say that we are left with a "substantial and ineradicable doubt" as to whether the jury was properly guided here. It is an established principle that we evaluate a jury instruction in the context of the overall charge. *See United States v. Park*, 421 U.S. 658, 674, 95 S. Ct. 1903, 1912 (1975). Thus, when making our review we employ a holistic approach, rather than "isolating and examining the deficiencies of individual instructions." *Lomelo v. United States*, 891 F.2d 1512, 1518 (11th Cir. 1990) (quotation marks omitted). We find that although the wording of the final sentence of the constructive possession instruction would have been more clear if it included language about knowledge or intent, that flaw is mitigated by the totality of the instructions. Because here the jury instructions stated in a

11

different section that possession of the contraband had to be knowing, the failure to reiterate that requirement does not constitute reversible error. Additionally, the government during trial and in its closing argument repeatedly emphasized that it needed to prove that Cochran knowingly possessed the cocaine and cocaine base. *See Park*, 421 U.S. at 674, 95 S. Ct. at 1913 ("[I]n reviewing jury instructions, our task is also to view the charge itself as part of the whole trial."). The jury's decision to convict Cochran of the drug charges but acquit him of the ammunition charges demonstrates an understanding of that instruction, given that the ammunition was hidden in a bedroom dresser drawer while the drugs were located in plain sight in the converted garage and present in common areas of the home. On the whole, we find that the wording of the jury instructions created a difficulty—a difficulty that might have been avoided had the district court answered the jury's questions. However, we do not find that the jury was actually misled or that Cochran was prejudiced by the instruction, given the circumstances of the case and the fact that other provisions of the jury instructions laid out the proper elements of the offense.

III.

Cochran next argues that the district court erred in admitting evidence of his prior drug offense. We review the district court's admission of Rule 404(b)

12

evidence for abuse of discretion, *United States v. Brown*, 587 F.3d 1082, 1091 (11th Cir. 2009), and use a three-part test in our evaluation. "First, the evidence must be relevant to an issue other than the defendant's character." *United States v. Miller*, 959 F.2d 1535, 1538 (11th Cir. 1992) (en banc). Second, "there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act." *Id.* "Third, the evidence must possess probative value that is not substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403." *Id.*

The government in this case was tardy in filing notice that it wished to introduce prior crimes knowledge, but it claimed that its belatedness was due to the fact that it had just learned that Cochran intended to raise as a defense the argument that he did not live at 110 Lucille Avenue. Cochran contends that such evidence is not relevant to the issue of where he resided. However, Cochran pled not guilty, and "[a] defendant who enters a not guilty plea makes intent a material issue." *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995).

Cochran also contends that his 2004 offense was too remote to be probative and that the offense was dissimilar because it involved different drugs. We cannot agree. We have approved of the introduction of evidence regarding acts more remote than those at issue here. *See, e.g.*, *United States v. Matthews*, 431 F.3d

1296, 1311–12 (11th Cir. 2005) (per curiam) (offense was eight years prior); *United States v. Lampley*, 68 F.3d 1296, 1300 (11th Cir. 1995) (offense was fifteen years prior). We have also held that prior convictions for drug trafficking are considered highly probative of intent to commit the charged drug trafficking offenses. *Brown*, 587 F.3d at 1091. Because the contested evidence was relevant, sufficiently supported, and more probative than prejudicial, we find that the district court did not abuse its discretion in granting its admission.

IV.

Finally, Cochran contends that the evidence presented at trial is not sufficient to support his conviction. We review *de novo* whether there is sufficient evidence to support the jury's verdict and whether the district court properly denied Cochran's motions for a judgment of acquittal. *United States v. Merrill*, 513 F.3d 1293, 1299 (11th Cir. 2008). In doing so, we examine the evidence "in the light most favorable to the government, with all reasonable inferences and credibility choices made in the government's favor." *United States v. Ortiz*, 318 F.3d 1030, 1036 (11th Cir. 2003) (per curiam). We affirm a verdict if a reasonable trier of fact could conclude that the evidence establishes guilt beyond a reasonable doubt. *Id.*

To support a conviction under 21 U.S.C. § 841(a)(1), the government had to

14

show that Cochran had knowing possession of the drugs and an intent to distribute them. *See United States v. Faust*, 456 F.3d 1342, 1345 (11th Cir. 2006). Although Cochran acknowledges that a possession conviction may be upheld where the government has shown that the defendant had dominion and control over the premises containing the contraband, *see United States v. Clay*, 355 F.3d 1281, 1284 (11th Cir. 2004) (per curiam), Cochran argues that no reasonable jury could have concluded that he enjoyed such dominion and control. He contends that no evidence linked him to any of the drugs found within the house and that "mere presence in the area of contraband or awareness of its location is not sufficient to establish possession." *United States v. Gardiner*, 955 F.2d 1492, 1495 (11th Cir. 1992) (quotation marks omitted). He also challenges the credibility of Pettacio's testimony regarding her observation of 110 Lucille Avenue from her vantage point a block and a half away.

We disagree with Cochran's assertion that no evidence tied him to the contraband. During trial, the government presented evidence that Cochran was found standing in the driveway of the residence where the contraband was located with a key to the home in his pocket. Officer Pettacio testified that she had seen him enter and exit the house a number of times just before it was searched. Because we do not find her testimony that she was able to observe the house using

15

binoculars to be "incredible as a matter of law," that is, "relat[ing] to facts that [she] could not have possibly observed or events that could not have occurred under the laws of nature," we will not disturb the jury's findings. *United States v. Flores*, 572 F.3d 1254, 1263 (11th Cir. 2009) (per curiam) (quotation marks omitted). Additionally, it was shown that the drugs were present in common areas of the house and located in plain view in the converted garage. A letter was found within the residence that was addressed to Cochran, and Cochran's daughter acknowledged that he frequented the home. Finally, evidence was presented that Cochran had been convicted of prior drug-related crimes, which bears on his intent.

It is true that the defense presented testimony that contradicted the government's case, but "all conflicts in the evidence must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses." *United States v. Pearson*, 746 F.2d 787, 794 (11th Cir. 1984). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt." *United States v. Harris*, 20 F.3d 445, 452 (11th Cir. 1994). We find the evidence here sufficient to sustain Cochran's convictions.

16

V.

In conclusion, although we disapprove of the constructive possession instruction given to the jury, we do not find that under the circumstances of this particular case it misled the jury or prejudiced Cochran. We also find that the district court committed no abuse of discretion in admitting the Rule 404(b) evidence and that there is sufficient evidence to uphold Cochran's convictions.

**AFFIRMED.**