[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-15517
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cr-20460-DLG-3

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DANIEL ABREU-JIMENEZ,
a.k.a. Danny,

Defendant,

ARIEL VALDES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 4, 2013)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

After a jury trial, defendant Ariel Valdes appeals his convictions and sentences for conspiracy and attempt to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 18 U.S.C. § 2; conspiracy and attempt to commit a Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a), (b)(1), and 2; using a firearm in relation to a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(a) and 2; and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).

As to his convictions, Valdes argues that the district court abused its discretion by admitting evidence of Valdes's prior bad acts.  As to his sentences, Valdes contends that the district court did not comply with 21 U.S.C. § 851(b) because it did not ask him at sentencing whether he admitted the existence of the prior conviction used to enhance his sentences for the drug offenses.   After review, we affirm Valdes's convictions and sentences.

## I.  FACTS AND PROCEDURAL HISTORY

We begin by setting forth the details of Valdes's arrest based on the evidence introduced at his trial.  Valdes's convictions resulted from his participation in a plot to commit an armed robbery and steal between 10 and 15 kilograms of cocaine.

**A.    June 23, 2011 Sting Operation and Arrest**

In May 2011, Agent Erik Espinosa of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") posed as a "disgruntled drug courier working for a Colombian drug organization." Agent Espinosa contacted Jorge Gonzalez-Zulueta because Agent Espinosa thought he "had information about a crew of individuals committing armed home invasion type robberies in the [s]outh Florida region."

Agent Espinosa recruited Gonzalez-Zulueta to rob a "stash house," telling him that the home would contain between 10 and 15 kilograms of cocaine. Two other individuals also agreed to participate in the robbery—Daniel Abreu-Jimenez and Antonio Hernandez-Galindo. After a fourth prospective robber dropped out of the conspiracy, Abreu-Jimenez recruited two more accomplices—defendant Valdes and Youany Olivera-Garcia. Abreu-Jimenez assured the undercover ATF agent that Valdes and Olivera-Garcia were competent robbers, stating that "we could tell them, 'Look, there's a bazooka in there['] and they will look for a tank for sure."

On June 23, 2011, ATF agents executed the sting operation. A confidential informant ("CI"), posing as Agent Espinosa's uncle, met the five would-be robbers—defendant Valdes and Gonzalez-Zulueta, Abreu-Jimenez, Hernandez-Galindo, and Olivera-Garcia—at a predetermined location. Traveling in two vehicles, the CI directed the conspirators to a warehouse. The conspirators

3

believed that they would meet Agent Espinosa there, and that he would then lead them to the stash house. When the group arrived at the warehouse, the CI exited one of the vehicles, and entered the warehouse. Afterwards, law enforcement officers surrounded the two vehicles and arrested the five conspirators.

After making the arrests, law enforcement officers seized two firearms and ammunition from the vehicle in which defendant Valdes had been a passenger. One of those weapons, a Glock .40 caliber pistol, belonged to Valdes.

## B.    Indictment

On July 7, 2011, a federal grand jury in the Southern District of Florida returned an indictment naming as defendants each of the five participants in the June 23 sting operation.

The indictment charged all five defendants with the following: (1) conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846 ("count one"); (2) attempt to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) ("count two"); (3) conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) ("count three"); (4) attempt to commit Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a), 2 ("count four"); and (5) using and carrying a firearm during and in relation to a crime of violence and a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c)(1)(A), 2 ("count five"). The

4

indictment also charged Olivera-Garcia and Valdes with possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) ("count six").

## C.    Co-Defendants' Guilty Pleas

Valdes's four co-defendants all pleaded guilty to counts one, three, and five. Each one did so pursuant to a plea agreement which required them to cooperate fully in ongoing prosecutions.  In return, the government agreed to dismiss counts two and four.

## D.    Valdes's Pre-Trial Withdrawal of Guilty Plea

Like his co-defendants, Valdes also pleaded guilty to counts one, three, and five pursuant to a plea agreement.  However, at a hearing on Valdes's attorney's motion to withdraw, Valdes made an oral motion to withdraw his guilty pleas. Valdes informed the district court that he had not fully understood what he was pleading guilty to and that he had "pleaded guilty to something that [he is] not guilty of."  The district court allowed Valdes to withdraw his guilty pleas and scheduled the case for trial.[1]

## E.    Government's 21 U.S.C. § 851(a) Notice

During a January 20, 2012 pre-trial hearing, the government informed the court that it intended to seek enhanced penalties for the drug offenses in counts one

---

[1]At the same hearing, the district court denied Valdes's attorney's motion to withdraw.

5

and two based on defendant Valdes's prior convictions. The government stated that it would file a notice under 21 U.S.C. § 851 of its intent to seek such a penalty enhancement, and stated that the penalty enhancement "will subject the defendant to a 20-year mandatory minimum on the drugs, and then of course that's subject to a consecutive five-year sentence on the 924(c) charge." The government elaborated, "I just want to state on the record so that the defendant is aware of this, so this doesn't become an issue later that he was not aware and not given the opportunity to plead pursuant to the filing of this enhancement."

The district court advised the government that it still needed to file the formal § 851(a) notice. The district court then turned to defendant Valdes and said, "you have heard the Assistant U.S. Attorney announce that she intends to file a pleading which would subject you to a minimum mandatory sentence of 20 years. Do you understand that, sir?" Valdes answered, "Yes." Valdes also affirmed that he had discussed the issue with his attorney.

The district court then engaged in the following exchange with Valdes and his attorney about his right to testify, the sentencing guidelines, his potential 20-year mandatory minimum sentence, and his potential 5-year consecutive sentence on his firearm charge for a total of 25 years' imprisonment. Because it is relevant to the issue of whether Valdes was given an opportunity to respond to the government's § 851(a) notice, we set the exchange forth in full:

THE COURT: All right. So have you discussed—well, there are a couple of things, Mr. Valdes. No. 1, you need to know that you do have the right to take the stand and testify in your own behalf. Your lawyer can provide you with advice, but you must make the final decision as to whether you will take the stand and testify or not. Do you understand?

THE DEFENDANT: Yes.

THE COURT: And occasionally I receive letters from defendants several years later on some occasions that they didn't understand the sentencing guidelines, and I want to make sure you have discussed those sentencing guidelines with your attorney. Mr. Rodriguez, have you discussed the application of the sentencing guidelines?

MR. RODRIGUEZ [Valdes's defense counsel]: I have, Your Honor.

THE COURT: And obviously he knows that he has a minimum mandatory term of 20 years if found guilty, that's the jury's decision, and then in addition to that, there is a five-year consecutive sentence if he's found guilty of the firearms offense, totaling 25 years. Have you discussed that issue with him?

MR. RODRIGUEZ: I have, Your Honor, but I'd ask the Court to colloquy my client to make sure that he understood our conversation and that he's aware of the fact that—

THE COURT: Well, we just explained to him—you told me that he understood that if the government files the enhancement, he's subject to a mandatory 20-year sentence. And in addition to that, Mr. Valdes, if you are found guilty of the firearms count, you would be subject to an additional consecutive five-year sentence, for a total of 25 years. Do you understand, sir?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions of me or is there anything you want to ask your lawyer in this regard?

THE DEFENDANT: No.

7

That same day, the government filed its notice pursuant to 21 U.S.C. § 851(a)(1). The government's notice specifically identified Valdes's 2007 Florida conviction for "Cannabis/Sell/Manufacture (Cultivate)/Delivery/Possession with Intent to Distribute." Because of this prior conviction, if the jury convicted Valdes of count one or two, then he would be subject to a mandatory minimum prison term of either 10 or 20 years, depending on what drug quantity the jury found.

## F.    Government's Rule 404(b) Notice

The government also filed, before trial, a notice under Federal Rule of Evidence 404(b) of its intent to introduce evidence at trial of defendant Valdes's prior acts. The government's notice stated, inter alia, that Valdes and Olivera-Garcia had committed "prior armed and unarmed home invasion robberies." It further stated that "the two together engaged in four separate marijuana grow house robberies, and during one, a shotgun was pointed at Ariel Valdes, who was armed with a pistol." The government contended that "[s]uch evidence is admissible as evidence under Fed. R. Evid. 404(b) as proof of intent, preparation, plan, knowledge, or absence of mistake in the instant case."

Valdes responded to the government's notice with a motion to exclude the proposed Rule 404(b) evidence, arguing that it was unreliable and unduly prejudicial.

During the same January 20, 2012 pre-trial hearing, the district court took up the Rule 404(b) issue and announced that it would rule on the issue at the end of the government's case-in-chief, at which time it could "really see what the facts are and understand how they relate in the case."

## G.    Valdes's "Mere Presence" Defense at Trial

Valdes's three-day trial began on January 23, 2012.  The ATF agent who initiated the sting operation, Agent Espinosa, was the government's first witness. During cross-examination of Agent Espinosa, Valdes's attorney revealed that one of Valdes's defenses was that Valdes was merely present at the warehouse that day and was not involved in the planned robbery.  These questions, the district court concluded, opened the door to Rule 404(b) evidence.

Specifically, during cross-examination, Valdes's attorney asked Agent Espinosa why ATF had not arrested an individual who had dropped out of the robbery plan before the evening of June 23.  Agent Espinosa stated that this person, Perez, was not arrested because "[h]e did not show up on the day of the arrest."  Valdes's attorney then asked: "So if you showed up, you got arrested?" Agent Espinosa answered, "Yes."

Later on during cross-examination, defendant Valdes's attorney returned to this point.  He asked Agent Espinosa: "Ariel Valdes was arrested because he showed up that day, correct?  Agent Espinosa answered: "He was taken into

9

custody, yes." Valdes's attorney reiterated that Valdes had been arrested "[b]ecause he showed up." Agent Espinosa agreed with this statement, testifying: "Because he was there, yes."

## H.    Introduction of Rule 404(b) Evidence About Other Robberies

At end of the government's case-in-chief, the district court returned to the Rule 404(b) issue. The district court pointed out Valdes's attorney's questions of Agent Espinosa. Based on these questions, the district court stated, "the defense in part is, [']I was simply merely present. I had no knowledge of an upcoming robbery.[']" Because Valdes was asserting this defense, the district court concluded that "perhaps the Rule 404(b) evidence of other incidents would be relevant and . . . should be allowed."

Valdes again objected to the admission of the Rule 404(b) evidence. He contended that it was Agent Espinosa who had first brought up the "mere presence" issue and that Vlades's attorney "didn't use the words 'mere presence.'" The district court overruled the objection.

The government then called Olivera-Garcia, Valdes's co-defendant, who testified about four home invasion robberies that he and Valdes had committed before the June 23 sting operation. Olivera-Garcia stated that, approximately two years before June 23, 2011, he and Valdes committed a home invasion robbery in Cape Coral, Florida, during which they stole approximately seven pounds of

10

marijuana.  Valdes and Olivera-Garcia also robbed a home in West Palm Beach, Florida, again stealing marijuana.  Approximately a year and a half before their June 23, 2011 arrests, Valdes and Olivera-Garcia committed another home invasion robbery in Eureka, Florida.  During that robbery, they stole "about eight pounds" of marijuana.  They robbed a fourth house in Tampa, Florida; however they were unsuccessful in stealing marijuana during that robbery "[b]ecause there were people inside the house."  Olivera-Garcia testified that, during each of these robberies, either he or Valdes had a gun.

During cross-examination, Olivera-Garcia could not remember the addresses of the houses that he and Valdes had robbed, or the specific dates on which the robberies had occurred.  Olivera-Garcia recalled that the Cape Coral house was white, but he did not remember the colors of the other houses.  Olivera-Garcia stated that he and Valdes had learned the locations of these drug houses by eavesdropping during public conversations in "cafeteria bars" and then installing tracking devices on the vehicles of strangers who talked about keeping marijuana. However, Olivera-Garcia did not remember the specific bars or cafeterias where he and Valdes had gone to learn about robbery targets.

## I.    Jury Instructions on Rule 404(b) Evidence

During the jury instructions, the district court called the jury's attention to the Rule 404(b) evidence.  The district court reminded the jury that it had "heard

11

evidence of acts done by the defendant on other occasions that may be similar to acts the defendant is currently charged with." It instructed that the jury "must not consider any of this evidence to decide whether the defendant committed the acts charged now." However, the jury could "consider this evidence for other very limited purposes." The district court explained:

> If other evidence leads you to decide beyond a reasonable doubt that the defendant committed the acts charged, you may consider evidence of similar acts done on other occasions to decide whether the defendant had the state of mind or intent necessary for the crime charged, acted according to a plan or to prepare to commit a crime, or committed the charged acts by accident or mistake.

## J.    Verdict and Sentencing

The jury found Valdes guilty on all six counts. Before sentencing, the probation office prepared a presentence investigation report ("PSI"). The PSI stated that Valdes was subject to a mandatory minimum of 20 years' imprisonment for counts one and two based on his having previously been convicted of a felony drug offense. See 21 U.S.C. § 841(b)(1)(A)(ii). Valdes was also subject to a consecutive five-year sentence for the count five firearm offense. See 18 U.S.C. § 924(c)(1)(A)(i). Accordingly, Valdes's advisory guidelines range for counts one through four and six was the mandatory minimum 240 months' imprisonment. His guideline range for count five was a consecutive term of 60 months' imprisonment. See U.S.S.G. § 5G1.1(b) (2011).

12

Valdes did not timely file objections to the PSI. However, at sentencing, Valdes's attorney advised the district court that Valdes wished to raise untimely objections. Valdes's attorney stated "[Valdes is] telling me that I told him that if he went to trial and lost, he would get 17 years. He doesn't quite understand now why the PSR and the law says that he should be sentenced to a minimum mandatory of 25 years." The district court responded that, before trial, the government had stated, with Valdes present, that Valdes's guidelines range upon conviction would be 25 years. The government agreed, noting that it had "discussed the impact of the 851 enhancement that the government was contemplating filing." The district court thus overruled that objection and a substantially identical objection, noting that it had gone "through that issue very carefully with the defendant before he made the decision to withdraw his plea."

Later on at the sentencing hearing, Valdes personally argued that he should receive a nine-year sentence, like the sentences his co-defendants had received. Valdes also argued that he "had nothing to do . . . whatsoever with those things." The district court responded that "the government announced that they were filing an enhancement which subjected you to substantially higher guidelines than your codefendants. They were not subject to that enhancement, because the government didn't file it in their case[s]. They did in your case when you elected to go trial, which is their right to do."

13

The district court sentenced Valdes to 240 months' imprisonment on counts one through four and 120 months' imprisonment on count six, all to run concurrently. It imposed a consecutive 60-month sentence on count five, resulting in a total sentence of 300 months (which equals 25 years).

Valdes timely appealed his convictions and sentences.

## II.  DISCUSSION

### A.    Rule 404(b) Challenge to Convictions

On appeal, Valdes argues the district court erred by allowing Olivera-Garcia's testimony about his prior drug thefts. Federal Rule of Evidence 404(b) forbids the admission of any evidence of prior bad acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).[2] However, the same evidence may be admitted for some other purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). This Court has previously observed that "Rule 404(b) is a rule of inclusion," and relevant prior bad acts evidence "like other relevant evidence, should not lightly be excluded when it is central to the

---

[2]We review a district court's evidentiary decisions for abuse of discretion. United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005). "An abuse of discretion arises when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." Id. Even if we determine that an abuse of discretion occurred, "[a]n evidentiary ruling will stand unless the complaining party has shown a substantial prejudicial effect." United States v. Breitweiser, 357 F.3d 1249, 1254 (11th Cir. 2004) (internal quotation marks omitted).

prosecution's case." United States v. Jernigan, 341 F.3d 1273, 1280 (11th Cir.

2003) (internal quotation marks omitted).

> Our test regarding the admissibility of prior bad acts evidence is as follows:
>
> First, the evidence must be relevant to an issue other than the defendant's character; Second, the act must be established by sufficient proof to permit a jury finding that the defendant committed the extrinsic act; Third, the probative value of the evidence must not be substantially outweighed by its undue prejudice, and the evidence must meet the other requirements of Rule 403.

United States v. Matthews, 431 F.3d 1296, 1310–11 (11th Cir. 2005) (internal

quotation marks and citation omitted).  In every conspiracy case, "a not guilty plea

renders the defendant's intent a material issue" unless the defendant affirmatively

makes it a non-issue.  Id. at 1311 (internal quotation marks omitted).

Applying this test here establishes that the district court did not abuse its

discretion when it allowed Olivera-Garcia to testify about Valdes's prior bad acts.

As to the first prong, the evidence was relevant to an issue other than

Valdes's character because he pleaded not guilty to two conspiracy offenses, and

he did not affirmatively remove intent as an issue in the case. See id.  More

importantly, as the district court noted, Valdes affirmatively made intent an issue

in the case by suggesting that he was arrested only because he was present during

the sting operation, implying that he was not involved in the robbery plot.  See

United States v. Delgado, 56 F.3d 1357, 1365 (11th Cir. 1995) (affirming the

introduction of prior bad acts evidence because the defendant "presented a 'mere

15

presence' defense, forcing the government to prove his criminal intent so as to negate any innocent explanation for his presence").

Valdes contends that the prior bad acts evidence was not materially similar to the charged crimes because it involved burglaries and not robberies, in that people were not in the homes during any of the three successful thefts. This argument fails. First, Valdes did not make this robbery-burglary distinction before the district court, and we do not consider for the first time on appeal "arguments not raised squarely before the district court." Bryant v. Jones, 575 F.3d 1281, 1308 (11th Cir. 2009). In any event, we would reject this materially-similar argument. The fact that Valdes repeatedly stole drugs, while armed, was relevant to whether he had the requisite intent during the June 23 sting operation for the jury to convict him of the charged offenses. This is true regardless of what specific offenses that his prior bad acts might have constituted had he been prosecuted for them.

Valdes also challenges the relevancy of the prior bad acts evidence on the ground that his earlier thefts involved "relatively small quantities of marijuana," whereas the sting operation was supposed to involve a large quantity of cocaine. That argument also lacks merit. See United States v. Cochran, 683 F.3d 1314, 1321 (11th Cir.) ("Cochran . . . contends that his 2004 offense . . . was dissimilar because it involved different drugs. We cannot agree."), cert. denied, 133 S. Ct. 492, 492 (2012).

16

As to the second prong, the government was required to introduce "sufficient proof to enable a jury to find by a preponderance of the evidence that [Valdes] committed the act[s] in question." See United States v. Edouard, 485 F.3d 1324, 1344 (11th Cir. 2007). The government did so. Olivera-Garcia testified that he was present with Valdes during each of the four prior robberies. We previously held that "the uncorroborated word of an accomplice provides a sufficient basis for concluding that the defendant committed the extrinsic acts admissible under Rule 404(b)." United States v. Dickerson, 248 F.3d 1036, 1047 (11th Cir. 2001) (internal quotation marks and alteration omitted). Moreover, Olivera-Garcia provided ample details about the prior offenses. Although there were specific details that Olivera-Garcia could not recall, it was for the jury to determine whether Olivera-Garcia was a credible witness. See United States v. Dothard, 666 F.2d 498, 502 (11th Cir. 1982) ("[T]he question of whether a defendant actually committed a prior extrinsic act is a jury question, unless the court is convinced that the jury could not reasonably find that the defendant committed the alleged prior act.").

Turning to the third prong, Federal Rule of Evidence 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Exclusion under Rule 403 "is an extraordinary remedy, which should only be used sparingly,

17

and the balance should be struck in favor of admissibility." Edouard, 485 F.3d at 1344 (internal quotation marks and alterations omitted).  No Rule 403 violation occurred in Valdes's case.  Evidence that Valdes previously had used guns to steal drugs was highly probative in determining whether Valdes intended to participate in the charged conspiracy to use guns to steal drugs.  As for Valdes's claim of prejudice, this Court has noted that "extrinsic drug offenses do not tend to incite a jury to an irrational decision." Delgado, 56 F.3d at 1366.

Accordingly, the district court did not abuse its discretion by allowing Olivera-Garcia to testify about Valdes's earlier drug thefts.

## B.    21 U.S.C. § 851(b) Challenge to Sentences

Valdes challenges his concurrent 20-year mandatory minimum sentences on counts one and two.[3]  Valdes was subject to that mandatory minimum because he had a prior felony drug conviction.  21 U.S.C. § 841(b)(1)(A).  For a district court "to impose an enhanced sentence based on prior convictions, . . . the government must comply with the procedural requirements of . . . 21 U.S.C. § 851." United States v. Cespedes, 151 F.3d 1329, 1331 (11th Cir. 1998).

Specifically, before trial (or before a defendant pleads guilty), the government must file and serve an information that states the previous convictions

---

[3]We review an alleged failure to comply with 21 U.S.C. § 851(b) for harmless error. United States v. James, 642 F.3d 1333, 1343 (11th Cir. 2011).

18

that the government intends to rely upon to seek a sentence enhancement.  21 U.S.C. § 851(a)(1).  The government complied with § 851(a)(1) here.

If the government files a § 851(a) information, and the defendant subsequently is convicted or pleads guilty, a district court must "after conviction but before pronouncement of sentence" ask the defendant "whether he affirms or denies that he has been previously convicted as alleged in the information, and . . . inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence."  Id. § 851(b) (emphasis added).  In Valdes's case, the district court, after his conviction, did not conduct the specific colloquy prescribed in § 851(b).  Rather, the district court effectively did so before trial.  Specifically, the district court explained to Valdes in detail that his sentence would be enhanced based on a prior conviction if the government filed its information and Valdes was convicted.  Valdes stated that he understood this.  After his conviction, the PSI described Valdes's same prior conviction that was in the § 851(a) notice.  Importantly, at no point did Valdes object to facts in the government's § 851(a) information or the PSI.

Under our precedent, "where § 851(a) is complied with and a defendant is properly apprised of the underlying convictions considered to enhance his sentence, substantial compliance with § 851(b) is sufficient."  United States v.

19

James, 642 F.3d 1333, 1340 (11th Cir. 2011).  In James, this Court affirmed an enhanced sentence under § 841(b), even though the district court had not strictly complied with § 851(b).  Id. at 1343.  The district court had "enhanced James's sentence based on prior convictions clearly delineated and described in the § 851 notice (in full compliance with § 851(a)) and also in the PSI, to which the court specifically directed James's attention during the sentencing hearing."  Id.  We therefore concluded that James had received "ample opportunity for any objection," which he had not made.  Id.  Thus, the district court's failure to perform the § 851(b) colloquy was harmless error.  Id.

Here the same is true.  Valdes "all but affirmed his prior conviction[]."  See James, 642 F.3d at 1343 (internal quotation marks omitted).  Accordingly, "[a]ny error in not specifically asking whether he affirmed or denied the conviction[] was harmless error."  Id.

## III.  CONCLUSION

Upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**