[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13628
Non-Argument Calendar

_____

D.C. Docket No. 1:13-cr-00440-TWT-JSA-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERMAINE GIBSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(November 19, 2015)

Before ED CARNES, Chief Judge, TJOFLAT and WILSON, Circuit Judges.

PER CURIAM:

Jermaine Gibson appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), and his 72-month prison sentence. He first challenges his conviction on <u>Batson</u> grounds. Next he contends that the government improperly vouched for its witnesses in closing argument and that the district court improperly instructed the jury on the meaning of "constructive possession." Finally, he challenges the substantive reasonableness of his sentence, contending that the district court's application of the 18 U.S.C. § 3553(a) factors violated his First Amendment rights.

## I.

The firearm Gibson was convicted of possessing was discovered in a home that he was unlawfully occupying in Lithonia, Georgia. A woman purchased that home from a bank in January 2013, with the closing date set for April 26, 2013. Gibson, along with several other people, unlawfully moved into the home during that time period. The purchaser and the bank's listing agent tried to get Gibson to leave. He refused. When the police visited it to investigate his occupancy, he told them that he owned the home. He claimed ownership based on a number of documents that he posted on the front door and windows of the home.[1] The gist of

---

[1] Those documents consisted of a "dispossessory warrant," an "affidavit of awareness," a "realtor and state agent notice," two quitclaim deeds, a "notification of reservation of rights UCC 1-308/1-207," and an "affidavit of truth."

those documents was that Gibson owned the home and that he was a "sovereign

citizen" not subject to the jurisdiction of the United States or any state.[2]

Gibson continued to occupy the home through the closing date. The

purchaser and the bank then went to court in DeKalb County, Georgia to settle the

ownership dispute. Gibson attended those proceedings. The court ordered him to

leave the home immediately. At the end of those proceedings, law enforcement

officers arrested Gibson for various state law charges related to his occupation of

the home. That same day the officers searched the home. They found fraudulent

identification documents with Gibson's name on them and a Smith & Wesson

revolver under the bedsheets in the master bedroom.

The officers also interviewed Gibson twice on the day of his arrest. During

those interviews, Gibson insisted that he owned the home, citing some of the

documents that he had posted on the windows and door. He stated that he slept in

the master bedroom most of the time and pointed to the location of that bedroom

on a schematic drawing of the home.

The officers also asked him whether there were any firearms in the home.

Gibson replied that another occupant had a shotgun. When asked about the

---

[2] For example, the "affidavit of truth" provided that Gibson was "not a 'person' when such term is defined in statutes of the United States or statutes of the several states when such definition includes artificial entities." It also stated that Gibson "voluntarily [chose] to comply with the man-made laws which serve to bring harmony to society, but no such laws, nor their enforcers, have any authority over [him]."

3

handgun (which the officers did not describe in detail) that had been found during the search, Gibson described it as a five-shot, black-handled revolver and stated that he had moved it around the home.  His description of the handgun matched the revolver the officers found in the master bedroom.

The government charged Gibson with one count of being a convicted felon who knowingly possessed a firearm (the handgun) in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  He agreed to stipulate at trial that he was a convicted felon at the time of the indictment.[3]  However, he continued to assert his sovereign citizen status.  On the first day of trial, he filed pro se an "affidavit of competency," which alleged (among other things) that the court was a "tribunal operated as a private corporation" instead of a real court.  At the end of trial Gibson stated that the district court lacked jurisdiction over him because he was a sovereign citizen.  The jury found Gibson guilty of being a felon in possession of a firearm, and the district court sentenced him to 72 months imprisonment.  This is his appeal.

## II.

Gibson first contends that the district court clearly erred when it rejected his Batson challenge to the government's strikes of five African American venire members.  He focuses particularly on the strike of Prospective Juror 1, a 24-year-

---

[3] Gibson had prior felony convictions for burglary and first degree forgery.

old African American.  When asked by the district court to provide a race-neutral reason for that strike, the government stated that he was young, unemployed, previously worked at a grocery store, and did not own a home.  Based on those characteristics, the government did not believe that he would be a "suitable juror" for the case because of the evidence relating to Gibson's fraudulent deeds to the home where he had been residing.  Gibson agreed that Prospective Juror 1 was a renter but argued that the government's explanation was mere pretext for discrimination.  The district court accepted the government's explanation, stating that Prospective Juror 1's "youth and lack of experience with real estate transactions of any kind" was a "legitimate, non-discriminatory reason" for striking him.

The Supreme Court held in Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986), that a "prosecutor's use of peremptory strikes in even a single case to remove blacks from the jury on account of their race violates the Equal Protection Clause." United States v. Stewart, 65 F.3d 918, 923 (11th Cir. 1995).  The framework for evaluating Batson challenges involves three steps. Id. at 923–24. The party challenging the strike must first establish a prima facie case of discrimination. Id. at 923.  If the challenger succeeds in showing a prima facie case, the striking party must then articulate a race-neutral reason for the strike. Id. Once the striking party articulates a race-neutral reason, the district court "must

5

evaluate the credibility of the stated justifications based on the evidence placed before it." United States v. Houston, 456 F.3d 1328, 1335 (11th Cir. 2006).

The district court's determination concerning the actual motivation behind each challenged strike" is "pure factfinding" that we review for clear error. Id.; see also Greene v. Upton, 644 F.3d 1145, 1155 (11th Cir. 2011) ("[T]he determination on the ultimate question of discriminatory intent . . . represents a finding of fact of the sort accorded great deference on appeal.") (quotation marks and alterations omitted).

The district court did not clearly err in denying Gibson's Batson challenge. As to the first step, the issue of whether Gibson established a prima facie case of discrimination is moot. Although the establishment of a prima facie case is an "absolute precondition to the prosecution's burden to articulate race-neutral reasons" for its strikes, Houston, 456 F.3d at 1335–36, that issue becomes moot when the district court rules on "the ultimate issue of intentional discrimination" without "explicitly determin[ing]" whether the defendant made out a prima facie case, at least where his challenge fails on steps two and three. Id.; see also United States v. Gamory, 635 F.3d 480, 495 (11th Cir. 2011); United States v. Edouard, 485 F.3d 1324, 1342–43 (11th Cir. 2007). That is what happened here.[4]

---

[4] After Gibson argued that he had established a prima facie case of discrimination and the government responded that he had not, the district court stated: "Well, I don't know.

6

Regardless of step one, Gibson's <u>Batson</u> challenge fails on steps two and three.  Step two only requires an explanation for the strikes that is legitimate, reasonably specific, and facially nondiscriminatory.  <u>United States v. Folk</u>, 754 F.3d 905, 914 (11th Cir. 2014); <u>United States v. Alston</u>, 895 F.2d 1362, 1366 (11th Cir. 1990).  The district court did not clearly err in finding that the government's asserted reasons for striking Prospective Juror 1 — that he was young, unemployed, previously worked at a grocery store, and did not own a home — are race neutral.

As for step three, the district court did not clearly err in finding the government's explanation for the strike credible and non-pretextual.[5]  In evaluating whether the rationale for a strike is mere pretext, the key question is the "<u>genuineness</u> of the [government's] explanation, rather than its reasonableness." <u>United States v. Walker</u>, 490 F.3d 1282, 1294 (11th Cir. 2007).  We evaluate the credibility of that explanation based on all the relevant facts.  <u>Parker v. Allen</u>, 565 F.3d 1258, 1271 (11th Cir. 2009).

Technically, [the government may be correct] . . . but I'm going to insist that you put on the record a racially neutral reason for exercising the strikes that you did."

[5] Gibson also argues that the district court improperly combined steps two and three.  It did not.  A district court improperly condenses steps two and three where it "summarily overrul[es]" the challenging party's objections "and/or fail[s] to consider whether [the challenging party] ha[s] refuted" the government's race-neutral explanations.  <u>United States v. Edouard</u>, 485 F.3d 1324, 1343 (11th Cir. 2007).  The <u>Batson</u> hearing transcript shows that the district court properly conducted the analysis.  It first asked the government to provide race-neutral reasons for its strikes (step two), heard Gibson's response, and then independently assessed the credibility of the government's proffered reasons (step three).

Gibson argues that the government's explanation for the strike was mere pretext for two reasons.  First, he points to the government's failure to strike a similarly situated white venire member who was also young and did not own a home.[6]  Second, he asserts that the government's inquiry about whether the venire members owned or rented their dwellings was not a meaningful voir dire on the issue of their ability to understand real estate transactions because even homeowners might not know much about real estate transactions.

The district court did not clearly err in finding that the reasons for the government's strike were credible and non-pretextual.  Even if a more meaningful voir dire were possible, it was not clear error for the district court to accept the government's race neutral reasoning that most homeowners are likely to know more about real estate transactions than someone who has never purchased a home. See Stewart, 65 F.3d at 926 ("[Where] there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (quotation marks and alterations omitted).  Gibson's focus on the government's decision not to strike the young, white venire member who did not own a home is misplaced because there were relevant differences between that venire member and

---

[6] Gibson notes in his brief to this Court that it was never actually established at voir dire whether Prospective Juror 1 had ever owned a home.  That is correct.  However, Gibson did not raise that point in the district court, and in his appellate brief he later states that Prospective Juror 1 had never owned a home.  In any event, the government's failure to clarify whether he had ever owned a home does not prove that its explanation was pretextual. See Parker, 565 F.3d at 1271 ("Neither a prosecutor's mistaken belief about a juror nor failure to ask a voir dire question provides clear and convincing evidence of pretext.") (quotation marks omitted).

the one who was struck.  See Parker, 565 F.3d at 1271 ("The prosecutor's failure to strike similarly situated jurors is not pretextual . . . where there are relevant differences between the struck jurors and the comparator juror[].") (quotation marks omitted).[7]

There were also five African Americans in the thirteen-member jury (twelve jurors and an alternate), out of twelve African Americans in the 32-person venire. See United States v. Puentes, 50 F.3d 1567, 1578 (11th Cir. 1995) ("Although the presence of [African American] jurors does not dispose of an allegation of race-based peremptory challenges, it is a significant factor tending to prove the paucity of the claim.").  For all of these reasons, the district court did not clearly err in finding that the government's reasons for the strike were credible and non-pretextual.

III.

Gibson also contends that the government improperly vouched for its witnesses in closing argument.  In his closing argument, defense counsel asserted that the officers who testified about Gibson's statements concerning his possession of the handgun essentially fabricated those statements after the interview.  In rebuttal, the government provided various reasons why the officers' testimony was credible.  In the course of doing so, the government stated: "I submit to you,

---

[7] The juror who was not struck was pursuing a bachelor's degree and was employed.

Ladies and Gentlemen, that these officers and these agents, their testimony is worthy of belief." The district court overruled Gibson's objection to that statement. According to Gibson, that decision was erroneous because the government improperly put its prestige behind the officers by assuring their credibility.

We review claims of improper vouching de novo. United States v. Epps, 613 F.3d 1093, 1100 (11th Cir. 2010). Improper vouching occurs where the government places its prestige "behind the witness, by making personal assurances of the witness' veracity." Id. (quotation marks omitted). The government's remarks must also "prejudicially affect the substantial rights of the defendant." Id. (quotation marks omitted).

Contrary to Gibson's argument, the government's statement did not improperly place prestige behind the officers. The transcript of the closing arguments establishes that the government was attempting to respond to Gibson's attacks on the officers' credibility. An argument that fairly responds to an argument is permissible. See United States v. Smith, 700 F.2d 627, 634 (11th Cir. 1983) ("[T]his Court has recognized an exception to [the prohibition on improper vouching], the so-called 'fair response' rule, that entitles a prosecutor to respond to arguments advanced by defense counsel in his or her statement to the jury."). The government did not base that response on evidence not before the jury, nor did it

10

use its own reputation to defend the officers' credibility.  See United States v. Lopez, 590 F.3d 1238, 1256–57 (11th Cir. 2009) ("[The] prohibition against vouching does not . . . forbid prosecutors from arguing credibility; rather, it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury.").  The district court therefore did not err in overruling Gibson's objection.

## IV.

Gibson's final challenge to his conviction is that the district court erred in instructing the jury on constructive possession.  The court instructed the jury that "[c]onstructive possession of a thing occurs if a person doesn't have actual possession of it but has both the power and the intention to take control over it later."  The court then instructed the jury that a "person who owns or exercises dominion and control over a residence in which contraband is knowingly concealed may be deemed to be in constructive possession of the contraband."[8]  According to Gibson, that instruction allowed the jury to find him guilty based solely on the fact that he possessed the property, even if one of the other occupants of the home had knowingly concealed the handgun.

We review jury instructions under a deferential standard of review.  Johnson v. Breeden, 280 F.3d 1308, 1314 (11th Cir. 2002).  "As long as they accurately

---

[8] The district court defined "knowingly" as an act done "voluntarily and intentionally and not because of a mistake or by accident."

11

reflect the law, the trial judge is given wide discretion as to the style and wording employed." Id. (quotation marks omitted). We reverse only where there is "substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations." United States v. Cochran, 683 F.3d 1314, 1319 (11th Cir. 2012) (quotation marks omitted). "We analyze the objected-to portion of the instructions in light of the entire charge and we keep in mind that isolated statements which appear prejudicial when taken out of context may be innocuous when viewed in light of the entire trial." Id.

"A person who owns or exercises dominion and control over a . . . residence in which contraband is concealed may be deemed to be in constructive possession of the contraband." United States v. Vera, 701 F.3d 1349, 1357 (11th Cir. 1983). However, a jury should not be "instructed that control of premises can serve as a sole basis of conviction." Cochran, 683 F.3d at 1320. Instead, "the essence of constructive possession is the power to control the contraband itself," and "control of the premises simply permits an inference of that power." Id.

Gibson's argument that the instruction allowed the jury to convict him for constructive possession of the handgun based solely on his control of the premises fails. The instruction states that the person who controls the premises where the "contraband is knowingly concealed can be deemed to be in constructive possession of the contraband," and goes on to state that the government must prove

12

that Gibson was the one who committed the crime of possessing the firearm.  See id. at 1319–21 (upholding a constructive possession instruction with "a number of problems" because those problems were mitigated by "the totality of the instructions").  The evidence at trial showed that Gibson slept most of the time in the master bedroom, law enforcement found the handgun in that bedroom, and Gibson's description of it matched the one that law enforcement found.  He also admitted to moving the handgun around the house.  Even if the instruction could have been clearer in terms of specifying that Gibson must control the handgun itself (and not merely the premises), that lack of clarity was "innocuous" in light of the evidence that Gibson did exercise control over the handgun.  Id. at 1319 (quotation marks omitted).

## V.

Gibson also challenges the substantive reasonableness of his sentence, contending that the district court's application of the 18 U.S.C. § 3553(a) factors violated his First Amendment rights.  Neither party objected to the district court's calculation of 41 to 51 months imprisonment as the guidelines range.  However, the government requested an upward variance of 21 months (to 72 months total), arguing that the guidelines range did not adequately reflect Gibson's criminal history or the relevant conduct underlying his conviction (his unlawful occupation of the home).  The district court agreed.  In explaining why the upward variance

was appropriate, it referred to Gibson's "filing of the documents the first day of trial that refused to admit that he was subject to the charges that were pending in this case." Gibson argues that reference makes his sentence substantively unreasonable. Essentially, he argues that the district court improperly followed § 3553(a)(2)(A)'s directive to consider the need to promote respect for the law when the court found that the documents he had filed evidenced disrespect for the law. See 18 U.S.C. § 3553(a)(2)(A) ("The court, in determining the particular sentence to be imposed, shall consider . . . the need for the sentence . . . to promote respect for the law . . . ."). We disagree.

The transcript from the sentence hearing establishes that the district court based the variance on the need to promote respect for the law as well as on Gibson's offense conduct and criminal history. Imposing an upward variance based on a defendant's disrespect for law is permissible. See United States v. Early, 686 F.3d 1219, 1222–23 (11th Cir. 2012) (upholding a "substantial" upward variance based partly on the defendant's "disrespect for the law"). The district court referred to the documents Gibson filed as exemplifying his disrespect for the law. Given that Gibson had filed documents asserting that he was not subject to the laws of the United States, the district court did not clearly err in making that finding. See United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc). (explaining that when reviewing a sentence, "[t]o the extent that the district court

14

has found facts, we accept them unless they are clearly erroneous.").  And the court did not apply an improper factor when it followed the statutory directive to consider need to promote respect for the law.

**AFFIRMED.**